UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| T.D.I. INTERNATIONAL, INC. and XGD SYSTEMS, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 6: 07-313-DCR |
| V. | ) ) ) | |
| GOLF PRESERVATIONS, INC. and SAMSON BAILEY, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of Defendants Golf Preservations, Inc. and Samson Bailey's motion to dismiss. [Record No. 16] Specifically, the Defendants have moved the Court to dismiss this action for failure to state a claim upon which relief can be granted. Because the Court finds that the Plaintiffs have presented enough facts to state a claim to relief that is plausible with respect to the claims for violation of the Kentucky Uniform Trade Secret Act, the Lanham Act, breach of contract and breach of fiduciary duty, the Court will deny the motion to dismiss with respect to these claims. However, the Plaintiffs' conversion and tortious interference with contractual or business relationships claims are preempted by the Kentucky Uniform Trade Secrets Act. Therefore, the motion to dismiss will be granted with respect to these claims.

## I.   BACKGROUND

Plaintiffs T.D.I. International, Inc. and XGD Systems, LLC ("Plaintiffs") are in the business of installing subsurface drainage systems for golf courses. Defendant Samson Bailey was an employee for T.D.I. and XGD in 2004-2005. During that time, the Plaintiffs allege that they taught Bailey various trade secrets, including their methods for surveying golf course putting greens, laying out and installing drainage lines, and removing and replacing sod from putting greens. In late 2005, Bailey ended his employment with the Plaintiffs and started Golf Preservations, a company also involved in the installation of subsurface drainage systems.

On September 11, 2007, the Plaintiffs filed this action against Golf Preservations, Inc. and Samson Bailey alleging violations of the Uniform Trade Secrets Act (Count I), the Lanham Act (Counts II and III), breach of contract (Count IV), breach of fiduciary duty/duty of loyalty (Count V), conversion (Count VI) and tortious interference with business relationships (Count VII). On November 7, 2007, the Defendants filed their motion to dismiss. [Record No. 16]

## II.   LEGAL STANDARD

The Supreme Court recently addressed the standard to be applied when considering motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "Under the new standard for ruling on a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Under *Twombly*, a plaintiff is not required to provide "heightened fact pleading of specifics," but must allege facts sufficient to "raise a right to relief above the speculative

level." *Id*. at 1965, 1974.  Additionally, all of a plaintiff's factual allegations must be taken as true in considering a motion to dismiss.  *Ricco v. Potter*, 377 F.3d 599, 603 (6th Cir. 2004).

### III.    ANALYSIS

#### A.    Violation of Kentucky Uniform Trade Secrets Act (Count I)

In Count I, the Plaintiffs' allege a claim under the Kentucky Uniform Trade Secrets Act ("KUTSA"), K.R.S. § 365.880 *et seq*.  Specifically, they assert that the "Defendants have used and/or disclosed Plaintiffs' XGD Systems Trade Secrets without the express or implied consent of Plaintiffs." [Record No. 1, Complaint ¶ 25]

The Defendants argue that this claim should be dismissed because the Plaintiffs have failed to allege specific facts describing their trade secrets.  In particular, the Defendants contend that, under *Twombly*, the Plaintiffs are required to "delineate with specificity what precisely they are claiming is a trade secret." [Record No. 16, p. 7] Under *Twombly,* a plaintiff must plead enough facts to show that the alleged claim is "plausible."  However, the Supreme Court has specifically rejected the notion that this "plausibility" standard raises the bar for a plaintiff's allegations at the pleading stage.

The KUTSA defines a "trade secret" as "information . . . that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means . . . and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  K.R.S. § 365.880(4)(a)-(b).  In paragraph 12 of the Complaint, the Plaintiffs identify the trade secrets as relating to "[the Plaintiffs'] methods for surveying golf course putting greens, laying out drainage lines, installing drainage lines,

removing and replacing the sod from the putting greens;" "specific techniques for use of equipment and hand tools;" and "customer lists and customer contact information." [Record No. 1, Complaint ¶ 12] These allegations constitute adequate identification of the trade secret material for pleading purposes. Moreover, the Plaintiffs have provided additional facts to support their claim relating to the relationship of the parties, including Defendant Bailey's former employment with the Plaintiff, his execution of a confidentiality agreement and his formation of Golf Preservations, Inc.

Viewing the allegations in the light most favorable to the Plaintiffs, the Court finds that the Plaintiffs have adequately alleged a claim under KUTSA. At this juncture in the proceedings, the Plaintiffs are not required to litigate their case by asserting specific factual allegations against the Defendants. The factual context provided by the Plaintiffs under the liberal notice pleadings of the Federal Rules is sufficient to show their claims satisfy *Twombly*'s "plausibility" test. Therefore, the Court will deny the Defendants' motion to dismiss the trade secret claim.

### B.    Violations of the Lanham Act (Counts II and III)

In Counts II and III, the Plaintiffs allege that the Defendants have infringed upon and unfairly competed with Plaintiffs' "XGD" trademark, in violation the Lanham Act, 15 U.S.C. § 1051 *et seq*. To establish a claim of trademark infringement or unfair competition, a plaintiff must allege that the defendant "used in commerce" one of the plaintiff's marks. *See* 15 U.S.C. §§ 1114, 1125(a). The Lanham Act defines "use in commerce" as:

the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce-

(1) on goods when-

> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

> (B) the goods are sold or transported in commerce, and

(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127. The Sixth Circuit had held that "[i]n federal trademark infringement claims under 15 U.S.C. § 1114, the 'touchstone of liability . . . is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 355 (6th Cir. 1998) (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)); *see also PACCAR Inc. v. TeleScan Technologies*, 319 F.3d 243, 249 (6th Cir. 2003). The central focus is whether "the unauthorized use of a registered trademark when selling or advertising a good or service using the trademark is likely to confuse or deceive consumers." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1188 (6th Cir. 1997).

The Defendants contend that the Plaintiffs cannot show that they have "used in commerce" the Plaintiffs' mark and, therefore, they seek dismissal of the Lanham Act claims.

-5-

In support, the Defendants rely primarily on the Sixth Circuit's decision in *Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003), and the Second Circuit's decision in *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005), and its progeny.

*Interactive Products* involved a defendant's use of the plaintiffs' LAP TRAVELER trademark in the URL post-domain path for a website.  The court distinguished this case from cases involving domain names, concluding that the post-domain path of the URL does not normally signify the source of a website, but merely indicates the manner in which information of the host computer's files is organized.  The court stated that consumers typically do not reach web pages containing a post-domain path by entering the complete URL into the web browser but by linking from a website's homepage that does not contain a post-domain path.  As such, the court held that the plaintiff could not establish that the presence of the LAPTRAVELER trademark in the post-domain path of the website was likely to cause consumer confusion as to the source of the product and therefore did not violate trademark law.

The Defendants also rely on the Second Circuit decision, *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005) and its progeny within the circuit, *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734 (E.D. Mich. 2003); *U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723, 727 (E.D. Va. 2003).  These cases involved trademark disputes arising from the pop-up advertisements generated by WhenU.com's computer software program, "SaveNow."  SaveNow contained a "directory of commonly used search phrases, commonly visited web addresses, and various keyword algorithms," and it functioned by

scanning an Internet user's activity to "determine whether any of the terms, web addresses, or content match[ed] the information in the directory." *See U-Haul*, 279 F. Supp. 2d at 725-26. When it found a match, SaveNow "identifie[d] an associated product or service category" and then, if appropriate, displayed a pop-up advertisement on the user's computer screen. *Id*. at 726. The particular advertisement displayed was selected at random from the advertisements that matched the "category of the user's activity." *Id*. WhenU.com sold "advertising space and opportunities" to merchants but did not sell "individual web addresses" or "guarantee to any advertiser that its ad [would] be shown when a consumer visit[ed] a particular website." *Id*. The plaintiff brought claims for trademark violations under the Lanham Act based on SaveNow's display of competitors' pop-up advertisements when Internet users searched for the plaintiffs' web sites. In *U-Haul*, the court held that WhenU did not place the U-Haul trademarks in commerce but rather used term for a "pure machine-linking function."

Conversely, the Plaintiffs rely on a number of authorities in support of their position that the sale or purchase of a competitor's trademark as a search engine keyword violates the Lanham Act. *See GEICO v. Google, Inc.*, 330 F. Supp. 2d 700, 704 (E.D. Va. 2004); *Google, Inc. v. American Blind & Wallpaper Factory*, 74 U.S.P.Q. 2d 1385, 1389 (N.D. Cal. 2005); *Buying for the Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310 (D.N.J. 2006); *Edina Realty, Inc. v. The MLSonline.com*, 2006 WL 737064 (D. Minn. March 20, 2006); *J.G. Wentworth v. Settlement Funding, LLC*, 2007 WL 30115 (E.D. Pa. January 4, 2007); *Rescuecom Corp. v. Computer Troubleshooters USA, Inc.*, 464 F. Supp. 2d 1263 (N.D. Ga. 2005); *Int'l Profit Associates, Inc. v. Paisola*, 461 F. Supp. 2d 672 (N.D. Ill. 2006). They further argue that the

Sixth and Second circuit cases are distinguishable from the question presented here. Specifically, they note that *Interactive Products* did not involve the search engine keyword issue and, therefore, is not controlling here. Further, they assert that the WhenU cases are distinguishable because they involved internal use of a trademark. Specifically, those cases did involve an internet user affirmatively entering a particular trademarked term into a search engine. And unlike the google and yahoo search engines involved in the instant case, WhenU did not permit its advertising clients to request or purchase specific keywords to add to the SaveNow directory.

The Court has given careful consideration to the arguments and authorities presented by both parties. In light of the uncertain state of the law on the *specific* issue presented in this case, the Court does not find the Defendants' arguments sufficient to warrant dismissal of the Plaintiffs' Lanham Act claims at this stage in the proceedings.[1]  Accordingly, the Court finds that the Plaintiffs have alleged facts sufficient to "state a claim to relief that is *plausible* on its face." *Twombly*, 127 S.Ct. at 1974 (emphasis added).

## C.      Breach of Contract (Count IV)

The Plaintiffs allege a breach of contract claim in Count IV of the Complaint. Specifically, the Complaint alleges that the Defendants "breached the confidentiality agreement by misappropriating Plaintiffs' trade secrets, proprietary information, processes and confidential information including, but not limited to, Plaintiffs' XGD Systems Trade Secrets." [Record No.

---

[1]      While the Plaintiffs' trademark claims primarily relate to the Defendants' purchase of the XGD trademarks to enhance their search engine visibility, the Plaintiffs have explicitly alleged that the Defendants have otherwise used the XGD trademarks in a manner that violates the Lanham Act.

1, Complaint ¶ 42]  In arguing for dismissal of this claim, the Defendants simply rely on their arguments relating to the trade secrets claim.  In particular, they contend that, because the breach of contract claim is based solely on the alleged use and disclosure of trade secrets, and because the Plaintiffs have failed to specifically identify the trade secrets that were misappropriated, the breach of contract claim should be dismissed.

The Defendants note correctly that the KUTSA does not preempt breach of contract claims whether or not they are based upon misappropriation of trade secrets.  *See* K.R.S. § 365.892(2).  However, they assert that the breach of contract claim cannot survive a Rule 12(b)(6) motion because it is based on an insufficiently-pled misappropriation of trade secrets claim.  The Defendants do not state any other reason that the breach of contract claim is deficient.

As noted previously, the Court finds that the Plaintiffs have adequately pled their trade secrets cause of action.  Moreover, having reviewed the Complaint and viewing the allegations in a light most favorable to the Plaintiffs, the Court finds that the Plaintiffs have adequately pled facts sufficient to demonstrate that, at a minimum, it is "plausible" that Bailey violated the confidentiality agreement.  Accordingly, the Court will not dismiss the Plaintiffs' breach of contract claim.

### D.  Plaintiffs' Noncontractual Claims

The Defendants also argue that the Plaintiffs' causes of action for breach of fiduciary duty, conversion and tortious interference with a contract or business relationship should be dismissed because they are preempted by the KUTSA.  KUTSA "replaces conflicting tort,

restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.[2]" K.R.S. § 365.892(1). However, KUTSA does not preempt all causes of action that have to do with trade secrets, and if misappropriation is simply one element of a claim, such causes of action are not necessarily preempted. *Greif, Inc. v. MacDonald*, 2007 WL 679040 (W.D. Ky. 2007 (citing *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp.2d 784, 789 (W.D. Ky. 2001). As a result, examination of the Plaintiffs' noncontractual claims is required to determine whether the particular claim seeks a remedy for the misappropriation of trade secrets which KUTSA would preempt. *Id.*

### 1.    Breach of Fiduciary Duty/Breach of Duty of Loyalty (Count V)

In Count V of the Complaint, the Plaintiffs allege a breach of fiduciary duty claim. To determine whether the KUTSA preempts this claim, the Court must examine whether the fiduciary duty claim is premised upon the alleged disclosure of trade secrets. *See e.g.*, *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 972-73 (N.D. Ill. 2000) (finding that the breach of fiduciary duty claim was preempted by a uniform trade secrets act because the fiduciary duty claim was based upon the alleged disclosure of confidential information). In a situation where the alleged breach of duty does not rely on the misappropriation of a trade secret, the claim survives. *Thermodyne Food Serv. Prod., Inc., v. McDonald's Corp.*, 940 F. Supp. 1300, 1309 (N.D. Ill. 1996).

In *Thermodyne*, the plaintiffs premised a breach of fiduciary duty claim on the defendant's position as an officer of the plaintiff company – not the trade secret facts. The court

---

[2]      KUTSA does not preempt contractual remedies. K.R.S. § 365.892(2).

held that if the conduct giving rise to the breach involved the misappropriation of trade secrets, it was preempted, but to the extent the claim involved conduct other than the trade secret misappropriation, it survived. *Id.*

Construing the complaint in favor of the Plaintiffs, it alleges that Bailey held a position of trust as a consultant for T.D.I. and XGD and used that position for his own interests instead of T.D.I. and XGD.  This states an independent cause of action without relying on the misappropriation of a trade secret.  It was Bailey's conduct in contracting on his own behalf when he should have been acting on the Plaintiffs' behalf that is important to this claim.  To the extent that the breach of fiduciary duty claim is based on Bailey's actions in misappropriating trade secrets, KUTSA preempts the claim.  However, to the extent the allegations are based upon Bailey's conduct in contracting on his own behalf when he should have been acting on the Plaintiffs' behalf, the breach of fiduciary duty claim is not preempted by KUTSA and will not be dismissed.

## 2.    Conversion (Count VI)

In Count VI, the Plaintiffs allege that the Defendants "took without permission Plaintiffs' XGD Systems Trade Secrets" and "used this converted property . . .  to further their business interests." [Record No. 1, Complaint ¶¶ 52, 53] The Defendants contend that the conversion claim should be dismissed because it is preempted by the KUTSA.  The Court agrees.  The Plaintiffs' allegations center exclusively on the Defendants' alleged unauthorized use of XGD Systems trade secrets.  There are no allegations in the Complaint that give rise to a conversion

claim apart from the use of trade secrets.  Therefore, the conversion claim will be dismissed because it is preempted by the KUTSA.

### 3.    Tortious Interference (Count VII)

Count VII alleges that the Defendant "intentionally and improperly interfered with Plaintiffs' business relationships." [Record No. 1, Complaint ¶ 58]  In Kentucky, a tortious interference claim requires proof that a defendant, knowingly and without justification, aids and abets or procures another to breach a contract.  *See Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 486 (Ky. 1991).  Here, the Plaintiffs allege that the Defendants interfered with the Plaintiffs' business relationships with third parties by misappropriating XGD Systems Trade Secrets.  Because this claim is based entirely upon the allegation that the Defendants disclosed confidential business information and trade secrets to third parties, it is preempted by KUTSA. *See* K.R.S. § 365.892.

### III.   CONCLUSION

For the reasons discussed herein, it is **ORDERED** as follows:

1.    The Defendants' motion to dismiss [Record No. 16] is **GRANTED**, with respect to the Plaintiffs' claims of conversion (Count VI) and tortious interference with contractual or business relationships (Count VII).  However, the motion to dismiss is **DENIED** with respect to all other claims.

2.    The Plaintiffs' claims for conversion (Count VI) and tortious interference with contractual or business relationships (Count VII) are **DISMISSED**.

-12-

This 31st day of January, 2008.



Signed By:

*Danny C. Reeves*

United States District Judge